IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 6, 2002

## BUFORD BARRETT v. STATE OF TENNESSEE

**Appeal from the Circuit Court for McNairy County**
**No. 1057     Jon Kerry Blackwood, Judge**

---

**No. W2001-02862-CCA-R3-PC - Filed January 30, 2003**

---

The petitioner, Buford Barrett, appeals the McNairy County Circuit Court's denial of his petition for post-conviction relief from his conviction for rape of a child and resulting twenty-year sentence. He claims that he received the ineffective assistance of counsel because his trial attorney (1) refused to let him testify at trial; (2) failed to subpoena his cousin, who could have testified that the petitioner was not present when the alleged crime occurred; (3) failed to request a DNA test for the victim; and (4) failed to investigate the facts surrounding a statement that his wife gave to the police in which she admitted that she had sexually abused the victim. In addition, the petitioner contends that the cumulative effect of his attorney's deficiencies prevented him from receiving a fair trial. We affirm the trial court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Paul Simpson, Selmer, Tennessee, for the appellant, Buford Barrett.

Paul G. Summers, Attorney General and Reporter; Thomas E. Williams, III, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Jerry W. Norwood, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case relates to the rape of the petitioner's two-year-old daughter in May 1997. A jury convicted the petitioner, and this court affirmed the conviction. See State v. Buford Will Barrett, No. 02C01-9901-CC-00023, McNairy County (Tenn. Crim. App. Oct. 21, 1999), app. denied (Tenn. May 22, 2000). On appeal, this court stated the following facts: On May 16, 1997, the petitioner's wife, Jeanette Barrett, was in the bathroom, and the victim was asleep on a bed. When Ms. Barrett came out of the bathroom, she saw the defendant with his penis inside the victim's vagina. The petitioner immediately pulled up his pants and went into the kitchen. Ms. Barrett cleaned up the

victim, and the petitioner threatened to hurt Ms. Barrett if she told anyone about the rape. On July 19, 1997, a doctor examined the victim, and Ms. Barrett told the doctor that the victim had been sexually abused. Between July 24 and July 29, 1997, three doctors examined the victim and found injuries to the victim's genitalia. One of the doctors stated that the victim had an abnormally large vagina, which had been caused by an object being repeatedly inserted into it. A second doctor also believed that an object had been inserted into the victim and concluded that the object was larger than a finger. <u>Buford Will Barrett</u>, slip op. at 2-5.

At the evidentiary hearing, the petitioner's trial attorney, an assistant public defender, testified that he was appointed to represent the petitioner and that he talked with the petitioner eight to ten times. He said that the petitioner had been charged with rape and aggravated sexual battery against the victim and that the petitioner denied committing the crimes. He said that he did not interview Jeanette Barrett and that Ms. Barrett testified as an eyewitness against the petitioner at trial. He said that during her testimony, he learned for the first time that Ms. Barrett had given a written statement to the police in which she admitted digitally penetrating the victim on several occasions. He said that Ms. Barrett had been charged with committing a sexual crime against the victim but that she was not a codefendant. He said that he was allowed to see Ms. Barrett's statement at trial, that he questioned her about it, and that she asserted her Fifth Amendment privilege against self-incrimination. He said that Ms. Barrett's testimony contained contradictions and that he pointed out the contradictions to the jury in his closing argument.

The attorney testified that he did not request DNA testing for the victim because a doctor did not examine the victim until July 1997, two months after the alleged rape. He said that the petitioner wanted to take a polygraph test but that he advised the petitioner against it because the test results were inadmissible and because he was afraid the results would incriminate the petitioner. He said that although the petitioner had some mental short-comings and could not read or write, the petitioner understood everything he explained to the petitioner. He said that at one point, the petitioner said he wanted to testify at trial. He said that he advised the petitioner not to testify because the petitioner would be "badgered and possibly . . . contradicted by the DA." He said that he had thought the petitioner's testimony would be unnecessary because he expected Ms. Barrett's testimony to create reasonable doubt for the jury. He said that he never told the petitioner that the petitioner could not testify and that in hindsight, he still would have advised the petitioner not to take the stand. He said the petitioner told him that the petitioner's cousin could prove the petitioner was not with the victim when the rape allegedly occurred. He said that he thought he talked to the petitioner's cousin and that the cousin would not have helped the defense. He said that he was prepared for trial and that he did not believe the jury heard enough evidence to convict the petitioner.

Investigator Frank Levasseur of the McNairy County Sheriff's Department testified that he investigated the petitioner's case and that the petitioner and the petitioner's wife each gave a statement to the police. He said that after he finished investigating the petitioner's case, Jeanette Barrett gave a second statement in which she admitted penetrating the victim with her finger. He said that as a result of that statement, he charged Ms. Barrett with aggravated sexual battery and that Ms. Barrett's case was separate from the petitioner's case.

-2-

The petitioner testified that he was born in 1974 and had never gone to school or obtained a GED. He said he could not read or write but could write his name. He acknowledged that not being able to read or write had impaired his ability to understand things and that he did not understand the "basics" of the crimes alleged in his indictment. He said that he and Jeanette Barrett were no longer married and that she lied when she testified at trial that she saw him rape the victim. He said that other than receiving a traffic ticket, he had never been charged with a crime. He acknowledged that he talked with his trial attorney several times and that he told his attorney he did not rape the victim. He said that he told his attorney he wanted to testify and that his attorney explained some of the reasons why he should not take the stand. He said that his attorney advised him not to testify and that he took his attorney's advice. He said he had wanted to tell the jury that he never touched his daughter.

In its order denying post-conviction relief, the trial court only addressed the petitioner's claim that his attorney was ineffective for refusing to allow him to testify at trial. The trial court believed the attorney's testimony that he had advised the petitioner not to testify because he thought the petitioner "might damage himself on cross-examination." The trial court noted that the petitioner never claimed at the evidentiary hearing that his trial attorney refused to let him testify and ruled that the petitioner received the effective assistance of counsel.

The petitioner claims that he received the ineffective assistance of counsel for various reasons. In addition to his claim that his attorney was ineffective for refusing to let him testify at trial, he contends that his attorney should have subpoenaed his cousin, who could have testified that the petitioner was not at home with the victim when the alleged rape occurred. He also claims that his attorney should have requested a DNA test for the victim because the test would have exonerated him. Finally, he contends that his attorney was ineffective for failing to investigate the facts surrounding Jeanette Barrett's incriminating statement to police because the statement affected her credibility. In addition, the petitioner claims that the cumulative effect of his attorney's deficiencies denied him the right to a fair trial. The state argues that the petitioner received the effective assistance of counsel. We agree with the state.

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72, 113 S. Ct. 838, 842-44 (1993). The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court decided that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir.

-3-

1973). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance. Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. See Hellard, 629 S.W.2d at 9; DeCoster, 487 F.2d at 1201.

In a post-conviction case, the burden is on the petitioner to prove by clear and convincing evidence his grounds for relief. Tenn. Code Ann. § 40-30-210(f). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

As to the petitioner's claim that he received the ineffective assistance of counsel because his trial attorney refused to let him testify, the petitioner stated at the evidentiary hearing that he did not take the stand because his attorney advised against it. As the trial court noted, the petitioner never said that his attorney refused to let him testify. As to his claim that his attorney was ineffective for not subpoenaing his cousin, the petitioner did not present the cousin's testimony at the hearing. Without testimony from his cousin, the petitioner cannot demonstrate that he was prejudiced by his attorney's failure to call the witness on his behalf. See Black v. State, 794 S.W.2d 753, 757 (Tenn. Crim. App. 1990). Next, the petitioner claims that his attorney was ineffective for failing to request DNA testing. However, the petitioner's attorney testified that DNA testing was unnecessary in this case because the petitioner allegedly raped the victim two months before a doctor examined her, and the petitioner has presented no proof as to how scientific testing months after the crime could have exonerated him. The petitioner has failed to show that he received the ineffective assistance of counsel.

As to the petitioner's claim that his attorney was ineffective for failing to investigate the facts surrounding his wife's second statement to Investigator Lavessuer in which she admitted digitally penetrating the victim, we believe that the petitioner again has failed to demonstrate that he is entitled to relief. Our review of the trial transcript reveals that after Ms. Barrett's direct testimony, the petitioner's attorney asked to see her second statement, and the trial court granted the defense's request. On cross-examination, the petitioner's attorney asked Ms. Barrett if she had sexually abused the victim. Ms. Barrett said no and invoked her Fifth Amendment privilege against self-incrimination. Later, Investigator Levassuer testified for the defense that on December 12, 1997, Ms. Barrett stated that she had digitally penetrated the victim. Thus, the petitioner's attorney used the statement to impeach Ms. Barrett's testimony and attack her credibility. The petitioner has failed to explain what more his attorney should have done regarding the statement or how he was prejudiced by any deficiency.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court.

                                          _____

                                          JOSEPH M. TIPTON, JUDGE